THE CITY OF CHICAGO

*v.*

ELISE BURCKY.

*Filed at Ottawa October 11, 1895.*

1. STREETS AND ALLEYS—*when vacation of street is a special damage.* The vacation of part of a public street constituting a thoroughfare across railroad tracks, and the erection of a viaduct in another place, damage a land owner whose property is thereby left upon a blind court, in a manner different from the general public, and entitle him to damages, although his property only touched the vacated portion at one corner.

2. SAME—*damages to property owner computed as of time street was vacated.* The right of a land owner to damages from the vacation of a portion of a street so as to leave his property upon a blind

court, is not affected by his subsequent opening of a street which separates his property from the vacated portion of the original street, as his rights are fixed at the time of closing the street.

*Town of Lake* v. *Burcky*, 57 Ill. App. 547, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This was an action brought by Elise Burcky, against the town of Lake, to recover damages sustained to a tract of land fronting east 337 feet on State street and south ·558 feet on Sixty-first street, in Chicago, caused, as is alleged, by the vacation of a portion of Sixty-first street, joining her land on the south-west. The following plat shows the location of plaintiff's property, the streets and railroad tracks at the time the action was brought:

As will be seen by the plat, west of plaintiff's property several railroad tracks belonging to the Chicago, Rock Island and Pacific Railroad Company and the Lake Shore and Michigan Southern Railroad Company crossed Sixty-first street at about right angles. Just south of and adjoining Sixty-first street and State street those railroad companies owned a large tract of land, which was used by them for a switching yard and other usual railroad business, and was covered with numerous railroad tracks. The town of Lake and the railroad companies

considered the railroad crossing at Sixty-first street dangerous, and the town, on the 14th day of January, 1885, passed an ordinance authorizing the making of a contract with the railroad companies, whereby the companies were to erect on a strip of land 25 feet wide belonging to them and adjoining the south line of Sixty-first street, a viaduct, extending from a point 170 feet east of the east line of Wentworth avenue to a point 210 feet west of the west line of State street, the town to build the approaches thereto from Wentworth avenue and State street. When completed, the viaduct and approaches were to become a public highway. When the companies completed the building of the viaduct, the town was, by proper ordinance, to vacate that part of Sixty-first street at the railroad tracks commencing 139 feet east of the east line of LaSalle street, and running to a point 198 feet further east, and to the west line of plaintiff's property. The contract, as thus provided for in the ordinance, was duly executed and the viaduct built, and on December 30, 1885, the 198 feet on Sixty-first street at the railroad crossing, as above described, was vacated.

When this suit was commenced plaintiff's property consisted of an entire tract, as shown by the plat heretofore mentioned, but before the trial of the cause in the circuit court plaintiff subdivided the land, by opening through it two streets running north and south from Sixty-first street, one known as Butterfield street, on the west side of the tract, and the other about half way between Butterfield and State streets. The streets were each 66 feet wide, and the west line of Butterfield street is the west line of plaintiff's property as situated when the action was begun.

After the evidence was all introduced the defendant requested the court to instruct the jury as follows:

"The jury are instructed, that, it being admitted that the fee simple title to the street in question (Sixty-first street) was in the city, and it appearing from the evidence

that the property claimed to be damaged does not abut upon that portion of Sixty-first street that was vacated, but is situated in another block east of the block in which the portion of said Sixty-first street was vacated, the plaintiff has failed to prove any actionable injury on account of the said vacation of Sixty-first street, and all evidence of any damage done to plaintiff's property by reason of the said vacation is not to be considered by the jury in arriving at a verdict in this case."

This instruction was refused, and the decision is relied upon as error.

W. S. JOHNSON, BYRON BOYDEN, and JOHN MAYO PALMER, Corporation Counsel, for appellant:

All of the lots being in blocks other than the one in which the vacation occurred, plaintiff cannot recover damages in this case on account of the vacation. *East St. Louis* v. *O'Flynn,* 119 Ill. 200; *Chicago* v. *Union Building Ass.* 102 id. 379; *Parker* v. *Catholic Bishop,* 146 id. 158.

The appellee acquired her property with the knowledge that the statutes, while providing for the establishment- and maintenance of highways, also provide for vacating the same, and that abutters do not acquire a legal interest in the streets other than that which is common to all. Dillon on Mun. Corp. (3d ed.) sec. 730; *Rude* v. *St. Louis,* 93 Mo. 408; *Houck* v. *Wachter,* 34 Md. 266; *County Comrs.* v. *Duckett,* 20 id. 468; *Shaw* v. *Railroad Co.* 159 Mass. 597; *Hammond* v. *County Comrs.* 154 id. 509; *Blackwell* v. *Railroad Co.* 122 id. 1; *Brainerd* v. *Railroad Co.* 7 Cush. 506; *Thayer* v. *Boston,* 19 Pick. 511; *Stetson* v. *Faxon,* 19 id. 147; *Davis* v. *County Comrs.* 153 Mass. 218; *Hartshorn* v. *South Reading,* 3 Allen, 504; *Castle* v. *County,* 11 Gray, 26; *Smith* v. *Boston,* 7 Cush. 254; *Spalding* v. *Nourse,* 143 Mass. 490; *Brightman* v. *Fairhaven,* 7 Gray, 271; *Harvard College* v. *Stearns,* 15 id. 6; *Wesson* v. *Washburn I. Co.* 13 Allen, 101; *Willard* v. *Cambridge,* 3 id. 574; *Brady* v. *Shinkle,* 40 Iowa, 576; *Ellsworth* v. *Chickasaw County,* 40 id. 571; *Barr* v. *Oskaloosa,* 45 id. 278; *Stub-*

*enrauch* v. *Neycnesch,* 54 id. 567; *Powell* v. *Bunger,* 91 Ind. 65; *Railroad Co.* v. *Eberle,* 110 id. 542; *People* v. *Kerr,* 27 N.Y. 188; *Costler* v. *Mayor,* 43 id. 399; *Kimball* v. *Homan,* 74 Mich. 699; *Fearing* v. *Irwin,* 55 N.Y. 486 ; *Keller* v. *Railroad Co.* 28 Kan. 625; *Seeley* v. *Bishop,* 19 Conn. 134; *Railroad Co.* v. *Andrews,* 30 Kan. 590; *Dawson* v. *St. Paul,* 15 Minn. 136; *Shaubut* v. *Railroad Co.* 21 id. 502; *Adams* v. *Railroad Co.* 39 id. 297; *State* v. *Barton,* 36 id. 145; *Canman* v. *St. Louis,* 97 Mo. 92; *Fairchild* v. *St. Louis,* 97 id. 85; *McGee's Appeal,* 114 Pa. St. 470; *Stainwood* v. *Malden,* 157 Mass. 17; *State* v. *City of Elizabeth,* 54 N. J. 462; *Coffey County* v. *Venard,* 10 Kan. 95; *People* v. *Supervisors,* 20 Mich. 95; *Polock* v. *Trustees,* 48 Cal. 490; *Buhl* v. *Union Depot,* 98 Mich. 596; *Glasgow* v. *St. Louis,* 107 Mo. 198; *Levee District* v. *Farmer,* 101 Cal. 178; *Egerer* v. *Railroad Co.* 130 N. Y. 108; *Petition of Conrad & Pembroke,* 50 N. H. 530.

ALEX. CLARK, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

The viaduct and its approaches, constructed along the south line of Sixty-first street, were about one-quarter of a mile long, and extended from Wentworth avenue to State street. The construction of the viaduct opposite the plaintiff's land prevented the laying out of any streets south and stopped all travel in that direction, while the vacation of that portion of Sixty-first street crossed by the railroad tracks stopped all travel west, so that the property of plaintiff abutting on Sixty-first street between the railroad tracks and State street was shut in, and all access shut off from the south and from the west. By the construction of the viaduct south of plaintiff's property and by closing the street west of the property, and thus stopping all communication south and west, it is plain that plaintiff's property was seriously damaged. But it is contended that the damages she has sustained are not

special in their character, but are of the same kind as those sustained by the general public, and upon this ground no recovery can be had. If the damages sustained by the plaintiff are of the same kind as those sustained by the public at large, differing only in degree and not in kind, or if the damages sustained by the plaintiff are of the same kind sustained by the general public, the only difference being in the excess of damages sustained by plaintiff, then, under the well-settled rules of law which control cases of this character, she could not recover. *City of Chicago* v. *Union Building Ass.* 102 Ill. 379; *East St. Louis* v. *O'Flynn,* 119 id. 200; *Parker* v. *Catholic Bishop,* 146 id. 158.

Where damages are sustained by the public at large, but in different degrees, the law does not confer a remedy. Thus, in *Davis* v. *County Comrs.* 153 Mass. 218, it is said: "The general doctrine is familiar, that ordinarily one can not maintain a private action for loss or damage which he suffers in common with the rest of the community,— even though his loss may be greater in degree." The reason for the rule is, that a contrary doctrine would encourage many trivial suits.

In *Shaw* v. *Boston and Albany Railroad Co.* 159 Mass. 597, the court say: "The only right of the plaintiff to use the highway is that of the public, generally. Where one suffers in common with all the public, although from his proximity to the obstructed way or otherwise, from his more frequent occasion to use it, he may suffer in a greater degree than others, still he cannot have an action, because it would cause such a multiplicity of suits as to be of itself an intolerable evil."

In *Smith* v. *City of Boston,* 7 Cush. 254, in passing on the question the court held that a land owner could not recover unless he suffered a special damage not common to the public.

In *Heeler* v. *Atchison, Topeka and Santa Fe Railroad Co.* 28 Kan. 625, in the discussion of the question the court

said: "Where a party owns a lot which abuts upon that portion of the street vacated, so that access to the lot is shut off, it is clear that the lot owner is directly injured and may properly challenge the action. The closing up of access to the lot is the direct result of the vacating of the street, and he, by the loss of access to his lot, suffers an injury which is not common to the public. But in the case at bar access to plaintiff's lots is in no manner interfered with. The full width of the street in front and on the side is free and undisturbed, and the only real complaint is, that by vacating the street away from her lots the course of travel is changed. But this is only an indirect result."

In the discussion of the question in *City of Chicago* v. *Union Building Ass.* 102 Ill. 379, it is said (p. 393): "In the American Law Register for October, 1880, one of the learned editors of that periodical, Mr. Edmund H. Bennett, in a note to *Fritz* v. *Hobson*, after a very elaborate review of the principal cases bearing upon the question now before us, comes, as we think very correctly, to the conclusion: 'First, for any act obstructing a public and common right no private action will lie for damages of the same kind as those sustained by the general public, although in a much greater degree than any other person; second, an action will lie for peculiar damages of a different kind, though even in the smallest degree; third, the damages, if really peculiar, need not always be direct and immediate, like the loss of a horse, but may be as remote and consequential as in other cases of tort; fourth, the fact that many others sustain an injury of exactly like kind is not a bar to individual actions of many cases of a public nuisance.'"

Other cases holding a like doctrine might be cited, but we have referred to enough to show the current of authority bearing on the question. There is less difficulty in determining what the law is, than in making a proper application of the law to the different cases that may

arise.    In this case we think it plain that plaintiff was entitled to recover.    Her property fronted on Sixty-first street.    It extended west to and cornered with that part of the street which was vacated.    By the vacation of the street and the erection of the viaduct her property, extending from the railroad tracks east to State street, was shut in, and all access from the south and the west was shut off.    What was originally a thoroughfare along the entire line of plaintiff's property fronting on Sixty-first street, was by the action of the town turned into a blind court.    No other property was damaged or affected in the same way, except the small tract lying between Wentworth avenue and the railroad tracks.    The property of the general public was not affected like plaintiff's, nor was the damage sustained by the public of the same kind.    Before the action taken by the town, plaintiff's property fronting on Sixty-first street was so situated that it was available as lots for business purposes, but after the action of the town it was rendered useless for that purpose.

It is also claimed that by making the subdivision and opening Butterfield street, which separates plaintiff's property from the vacated portion of Sixty-first street, plaintiff has barred herself of the right to recover.    When the street was closed up and the viaduct constructed, the town became liable to pay such damages as the plaintiff had sustained.    The rights of the parties, so far as the question of damages was concerned, were fixed, and any future subdivision which the plaintiff might make of her property could not deprive her of a right to recover such damages as she had sustained.

From what has been said, if we are correct, the instruction did not announce a correct rule for the determination of the case, and it was properly refused.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*